```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


CHET MORRISON CONTRACTORS, L.L.C.           CIVIL ACTION

            Plaintiff,

                                            NO: 14-1958
VERSUS


ONEBEACON AMERICAN INSURANCE                SECTION: R(3)
COMPANY; MARKEL AMERICAN INSURANCE
COMPANY; AND CONTINENTAL INSURANCE
COMPANY.

            Defendants.
```

### ORDER AND REASONS

Defendants Onebeacon American Insurance Company and Markel American Insurance Company move the Court to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). The Court grants the defendants' motion because the hull and machinery insurance policy at issue does not provide defense coverage to plaintiff.

**I.  Background**

    **A.  The Underlying "Offshore Marine" Litigation**

On October 29, 2010, Offshore Marine Contractors, Inc. filed suit in this Court alleging that Palm Energy Offshore, LLC and Chet Morrison Well Services, LLC failed to pay for the charter of one of Offshore Marine's vessels, the L/B Nicole Eymard. Offshore Marine also claimed that Palm Energy and Chet Morrison breached a separate

oral agreement that the parties allegedly formed after one of the legs of the L/B Nicole Eymard became stuck. Under the terms of the alleged oral contract, Palm Energy and Chet Morrison promised to pay Offshore Marine for repair costs and lost charter fees if Offshore Marine cut the legs of the vessel to free it.[1]

Chet Morrison later sued Palm Energy and H.C. Resources, LLC ("HCR") alleging that if Chet Morrison were found to have chartered the L/B Nicole Eymard, Palm Energy and HCR were obligated to pay Chet Morrison the cost of the charter, plus a 15% markup and interest for untimely payments. On February 6, 2013, the Court consolidated the two cases for trial.[2]

On June 24, 2013 the Court conducted a two-day bench trial and summarized its findings as follows:

> (1) [Chet Morrison] is liable to [Offshore Marine] for the charter of the L/B Nicole Eymard for the Chandeleur 37 job, which took place from July 15 to July 27, 2008. HCR is in turn liable to [Chet Morrison] for the full amount of those charter fees.
>
> (2) [Chet Morrison] is liable to OMC for the charter of the vessel for the West Delta 55 job, which took place from July 28 to August 18, 2008. [Palm Energy] is in turn liable to [Chet Morrison] for the full amount of those charter fees.

---

[1] *Offshore Marine Contractors, Inc. v. Palm Energy Offshore LLC and Chet Morrison Well Services, LLC* (hereinafter "Offshore Marine Litigation"), No. 10-4151, R. Doc. 1.

[2] Offshore Marine Litigation, R. Doc. 140.

(3) Neither [Chet Morrison] nor [Palm Energy] is liable for the repair costs and downtime charter associated with the decision to cut the leg of the vessel.[3]

### B.   The Instant Litigation

Following the conclusion of the Offshore Marine litigation, Chet Morrison sued defendants Onebeacon America Insurance Company, Markel American Insurance Company, and Continental Insurance Company alleging that all three insurance companies failed to undertake Chet Morrison's defense in the Offshore Marine litigation despite Chet Morrison's status as an "additional insured" under the insurance policies underwritten by the defendants.  Thus, Chet Morrison seeks remuneration of the amount it was cast in judgment as well as defense costs associated with the Offshore Marine litigation.  Chet Morrison also asserts derivative statutory bad faith claims relating to the denial of those defense costs.

Onebeacon and Markel, as the underwriters for the hull and machinery policy ("H&M policy"), now move the Court to dismiss Chet Morrison's claims against them.  Onebeacon and Markel contend that the H&M policy provides first-party property insurance and does not contain any provision extending defense or indemnity coverage to Chet Morrison under the circumstances.[4]

---

[3] Offshore Marine Litigation, R. Doc. 243.  The Court later amended the judgment limiting Chet Morrison's liability for the West Delta 55 job to charter fees incurred between July 28 and July 31, 2008.  Offshore Marine Litigation, R. Doc. 258 at 15.

[4] R. Doc. 18-1.

**C.    The Marine Package Policy**

The H&M policy at issue is part of a marine package policy, which provides five distinct coverages that are underwritten by different insurers. These coverages include (1) the H&M Policy, (2) an Increased Value Policy, (3) a Protection and Indemnity Policy, (4) a Bumbershoot Liability Policy, and (5) and Excess Bumbershoot Liability Policy, all of which are subject to the terms of the "General Conditions" section.[5] Although Gulf Coast Marine is the named insured, Chet Morrison is included as an additional insured in the general conditions section. This section provides, in pertinent part:

> Permission is hereby granted to charter the vessel(s) to or to broker vessels through Chet Morrison Contractors, Inc. and/or any of their subsidiaries or affiliated companies; and for operations during the period of any such brokerage or charter, either oral or in writing: (a) Chet Morrison Contractors, Inc., or any of their subsidiaries or affiliates, and/or any corporation, partnership or individual operating and/or working the vessel(s), and/or anyone for whom the vessel(s) is/are working or being operated, shall be considered as Additional Insureds under all coverage provided by the policies referenced above, and underwriters' rights of subrogation against the additional insureds are hereby waived,; and (b) contractual liability shall be afforded Chet Morrison under this endorsement, which shall be deemed a written contract, providing defense and indemnity to Chet Morrison for any claims brought by or on behalf of the vessel's owners, employees, invitees, or crew for sickness, disease, personal injury or death, arising out of, directly or indirectly, the charter or brokerage of the vessel regardless if caused or

---

[5] R. Doc. 18-2 at 2.

4

>    contributed to by the sole or concurrent fault, negligence, or strict liability of Chet Morrison.[6]

The general conditions also contains a "Notice of Claim" section, which provides that

>    the Assureds must see to it that Underwriters receive written notice of any third party claim or "suit" as soon as practicable and must cooperate with Underwriters in the investigation or settlement of the claim or defense against any "suit". . . .[7]

Although Chet Morrison was included as an "additional insured" under all of the policies contained in the Marine Package Policy, Onebeacon and Markel did not subscribe to all of the individual policies. Instead, Onebeacon and Markel are the underwriters for the H&M Policy only. Thus, Chet Morrison's claims against Onebeacon and Markel are based solely on Chet Morrison's status as an additional insured under the H&M Policy. The H&M Policy provides:

>    This contract is to indemnify the Assured for loss resulting from loss of or damage to or liability of each vessel which is prima facie covered by the Owners' Policies or Club Entries but in respect of which there is subsequent non-payment . . . .[8]

In the "Perils" clause, the policy identifies the specific risks that the H&M Policy insures against:

>    Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are

---

[6] *Id.* at 21.

[7] *Id.* at 15.

[8] *Id.* at 32.

> of the Seas, Men-of-War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letter of Mart and Counter-Mart, Surprisals, Taking of Seas, Arrests, Restraints and Detainment of all Kings, Princes and Peoples, of what nation, condition, or quality soever, Barratry of the Master and Mariners, and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel . . . .[9]

The "extended adventures and perils clause" also provides coverage for:

> Loss or damage howsoever caused by theft, flood, cloudburst, tidal action, water current, rising water, ice, freezing, rain or other storm, and/or tempest, tornado or windstorm, landslide, falling object, listing, upset, miring down, capsizing, overturn, and shall also include direct loss or damage from pillage and looting and/or blowout and catering as there latter two terms are known in the oil industry.[10]

Finally, the H&M policy's "Inchmaree" clause provides that "this insurance also covers loss of or damage to the Vessel" directly caused by a variety of additional risks.[11]

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads

---

[9] *Id.* at 37.

[10] *Id.* at 25.

[11] *Id.* at 37.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

In considering a motion to dismiss for failure to state a claim, a court must typically limit itself to the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be

7

treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Nevertheless, uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment even when the documents are not physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (district court properly considered documents not attached to complaint when ruling on Rule 12(c) motion). The Court may also consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the documents are referred to in the complaint and are central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citations omitted).

**III. Discussion**

To determine whether Onebeacon and Markel breached their duty to defend Chet Morrison in the underlying Offshore Marine litigation, the Court must interpret the insurance policy at issue. Both parties agree that Louisiana law governs the interpretation of the insurance contract. In Louisiana, an insurance policy "should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994). "The judicial responsibility in interpreting insurance contracts is to

determine the parties' common intent." *Id.* (citing La. Civ. Code art. 2045). If the words of the contract are "clear and explicit and lead to no absurd consequences," the plain meaning of the contract prevails, and "no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046; *id.* art. 2047 (words of a contract should be given their "generally prevailing meaning," unless the words have acquired a technical meaning).

If there is ambiguity in an insurance policy, the ambiguity must be resolved in favor of the insured. *La. Ins. Guar. Ass'n*, 630 So. 2d at 764; *see also* La. Civ. Code art. 2056 ("A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."). This rule of strict construction should be applied only if the contract is actually ambiguous; it "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating ambiguity where none exists." *Reynolds v. Select Props., Ltd.*, 634 So. 2d 1180, 1183 (La. 1994) (quoting *Union Ins. Co. v. Advance Coating Co.*, 351 So. 2d 1183, 1185 (La. 1977)); *see also La. Ins. Guar. Ass'n*, 630 So. 2d at 764 ("When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation."). Moreover, "insurance companies have the right to limit coverage in any manner they

desire, so long as the limitations do not conflict with statutory provisions or public policy." *Reynolds*, 634 So. 2d at 1183.

Chet Morrison fails to identify any provision in the H&M Policy that provides for defense coverage and, after a careful reading of the policy,[12] the Court finds that the H&M Policy does not contain any provision providing Chet Morrison with defense coverage under the circumstances. The clear language of the policy indicates that the H&M Policy insures against "Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the [insured] Vessel."[13] In other words, the H&M Policy is first-party property insurance that "cover[s] damage to or loss of a vessel." Robert Force, ADMIRALTY AND MARITIME LAW 195 (2d ed. 2013) (Federal Judicial Center). *See also Destin Trading Co. v. Royal Ins. of Am.*, CIV. A. No. 89-5279, 1990 WL 238988, at *2 (E.D. La. Dec. 31, 1990) ("Thus the hull and machinery policy . . . covers [mitigation costs] if they were expended to avert or minimize damage to the barge."). The H&M Policy contains no

---

[12] The Court considers the Marine Package Policy in ruling on the motion to dismiss because the complaint refers to the policy numerous times and is central to Chet Morrison's claim. *See Shamrock Associated Indus., LLC v. Fid. Nat'l Prop. & Cas. Ins. Co.*, No. 06-4093, 2006 WL 6927866, at *2 (E.D. La. Nov. 2, 2006) (court considered mortgage contract not attached to complaint in ruling on motion to dismiss because complaint "refers to the mortgage numerous times[,] [t]he mortgage is attached to this motion, and is central to plaintiff's claims").

[13] R. Doc. 18-2 at 37 ("[T]his insurance also covers loss of or damage to the Vessel directly caused by the following [enumerated perils] . . . .").

language creating a duty to defend.  *See United Nat. Ins. Co. v. Mundell Terminal Serv., Inc.*, 915 F. Supp. 2d 809, 816 (W.D. Tex. 2012) ("[T]he determination of whether the insurer has a duty to defend or a duty to indemnify presumes that there is a provision locatable in the policy that obligates the insurer to undertake such a duty.").  Accordingly, the Court finds that the unambiguous language of the H&M Policy does not provide Chet Morrison with defense coverage.  *See* 14 Steven Plitt et al., Couch on Insurance § 198:3 (3d ed. 2013) ("[F]irst-party insurance . . . does not involve any need or duty to provide the insured with a legal defense.").

Although Chet Morrison concedes that the language of the H&M Policy itself does not provide defense coverage, it nevertheless argues that two provisions in the "General Conditions" section create a duty to defend under the H&M Policy.[14]  As previously noted, the General Conditions section applies to all of the policies in the Maritime Package Policy, including the H&M Policy.[15]

Chet Morrison first argues that the General Condition's "cooperation" clause creates a defense obligation under the H&M Policy.[16]  The cooperation clause states as follows:

---

[14] R. Doc. 19 at 5.

[15] R. Doc. 18-2 at 24 ("[The H&M Policy] is separate insurance but is subject always to the other terms and conditions stated in this policy . . . .").

[16] R. Doc. 19 at 5.

> [T]he Assureds must see to it that Underwriters receive written notice of any third party claim or "suit" as soon as practicable and must cooperate with Underwriters in the investigation or settlement of the claim or defense against any "suit."[17]

Although the cooperation clause demonstrates that the Marine Package Policy contemplates defense coverage in certain circumstances, it does not operate to transform the H&M Policy, which is first-party property coverage, into a third-party liability policy.  Indeed, the express terms of the cooperation clause limits the clause's applicability to "third party claim[s] or suits," which are not cognizable under a first-party property policy.  *See* Couch on Insurance § 198:3 ("[F]irst-party insurance . . . does not involve any need or duty to provide the insured with a legal defense.").  In other words, there is no occasion in which Chet Morrison would need to cooperate with Onebeacon and Markel in investigating or settling a third-party claim because the H&M Policy covers only first-party property claims.  *See Nat. Cas. Co. v. Lockheed Martin Corp.*, 799 F. Supp. 2d 537, 545-46 (D. Md. 2011) (holding that a provision for defense costs in the general conditions section of a Marine Package Policy does not transform a H&M Policy into one for defense and indemnity because such language "is commonplace in third-party-liability policies, but is never

---

[17] R. Doc. 18-2 at 15.

found in policies that only provide property-insurance coverage").[18] Accordingly, the Court finds that the General Condition's "cooperation clause" does not create a duty to defend under the H&M Policy.

Chet Morrison next argues that the General Condition's special endorsement clause, which adds Chet Morrison as an additional insured, provides for defense and indemnity "in relation to any oral or written charter of an [Offshore Marine] vessel."[19] Chet Morrison's argument misrepresents the language of the special endorsement. The special endorsement provides, in pertinent part:

> [C]ontractual liability shall be afforded Chet Morrison under this endorsement, which shall be deemed a written contract, providing defense and indemnity to Chet Morrison for any claims brought by or on behalf of the vessel's owners, employees, invitees, or crew *for sickness, disease, personal injury or death* . . . .[20]

Thus, the unambiguous terms of the special endorsement indicate that the defense and indemnity coverage extended by this provision is limited to "claims . . . for sickness, disease, personal injury, or death . . . ."[21] Acknowledging that the underlying suit did not involve any such claims, Chet Morrison argues that the clause's limitation of defense and indemnity coverage to claims for

---

[18] Chet Morrison does not cite or otherwise attempt to distinguish *Lockheed Martin* in its opposition.

[19] R. Doc. 19 at 5.

[20] R. Doc. 18-2 at 21 (emphasis added).

[21] *Id.*

13

sickness, disease, personal injury, or death is a mistake "that must be reformed."[22] Chet Morrison's argument is foreclosed by its failure to plead the mistake with particularity as is required by the Federal Rules. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Indeed, Chet Morrison's complaint is bereft of any allegations of a mistake, let alone the heightened pleading standard required by Rule 9(b). Thus, the Court finds that the General Conditions' special endorsement does not create a duty to defend under the H&M Policy and declines Chet Morrison's request to reform the plain language of the insurance policy. *See PYR Energy Corp. v. Samson Resources Co.*, Civ. A. No. 1:05-530, 2007 WL 858804, at *2 (E.D. Tex. Mar. 9, 2007) (Rule 9(b) requires, "at a minimum, [that] a party . . . aver what was intended, what was done, and how the mistake came to be made") (citing Wright & Miller, 5A Federal Practice & Procedure § 1299).

Chet Morrison also asserts several derivative claims relating to the statutory duties of insurance carriers. *See* La. Rev. Stat. §§ 22:1892 and 22:1973. Because Chet Morrison has no underlying claim against Onebeacon or Markel, its claims under La. Rev. Stat. §§ 22:1892 and 22:1973 fail as a matter of law. *See Riley v. Sw. Bus. Corp.*, Civ. A. No. 06-4884, 2008 WL 4286631, at *3 (E.D. La. Sept. 17, 2008) ("To prevail under La. Rev. Stat. 22:[1892] and

---

[22] R. Doc. 19 at 6.

22:[1973], a plaintiff must first have a valid, underlying, substantive claim upon which insurance coverage is based.") (internal quotations omitted).

### IV. Conclusion

For the foregoing reasons, the Court finds that the H&M Policy does not provide Chet Morrison with defense or indemnity coverage. Because Onebeacon and Markel's liability is premised solely on their status as underwriters for the H&M Policy, the Court GRANTS Onebeacon and Markel's motion to dismiss. Chet Morrison's arguments were so transparently wrong that the Court questions how counsel could have brought these claims in good faith.

New Orleans, Louisiana, this __17th__ day of March, 2015.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE